UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ASTEROID PTY. LTD. trading as
DINOSAUR DESIGNS

           *Plaintiff,*

-against-

TRE LAB, LLC, MODO RETAIL, LLC,
MODO EYEWEAR and JOHN
DOES 1-15,

           *Defendants.*

Case No. 11-CV-4229 (PGG)

**AMENDED COMPLAINT**



Plaintiff, Asteroid Pty. Ltd., trading as Dinosaur Designs, by its attorneys Lynn & Cahill LLP, for its amended complaint against the Defendants hereby alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff is a proprietary limited liability corporation organized under the laws of Australia, with its principal place of business at 585 Elizabeth Street, Strawberry Hills, NSW 2012, Sydney, Australia.

2. Defendant Tre Lab, LLC ("Tre") is a New York limited liability corporation with its principal place of business at 594 Broadway, 8th Floor (or Suite 801), New York, NY 10012.

3. Defendant Modo Retail, LLC ("Modo Retail") is a New York limited liability corporation with its principal place of business at 594 Broadway, 8th Floor (or Suite 801), New York, NY 10012.

4. Defendant Modo Eyewear ("Modo Eyewear") is a "dba" of Modo Retail with its principal place of business at 594 Broadway, 8th Floor (or Suite 801), New York, NY 10012. Modo Eyewear and Modo Retail shall collectively be referred to herein as "Modo".

5. On information and belief the defendants are commonly owned and controlled.

6. The Court has personal jurisdiction over defendants under CPLR §§ 301-303.

7. This Court has subject matter jurisdiction over claims arising under the copyright and trademark laws of the United States under 28 U.S.C. §§ 1331 and 1338.

8. This Court has subject matter jurisdiction over the remaining claims under 28 U.S.C. §§ 1332 and 1367.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

10. Plaintiff is a world-renowned creator of original and distinctive hand-sculpted jewelry and other select products, which it sells under the trademark "DINOSAUR DESIGNS". The trademark is registered in the United States, the United Kingdom and Australia in International Classes 14 and 21.[1]

11. Plaintiff's trademark appears on all of its goods.

12. Since 1987, Plaintiff's goods have become known world-wide for their unique, hand-sculpted surfaces, absence of perfectly straight lines and the unevenly finger-smoothed surfaces. Plaintiff's goods are so distinguished that they have been featured in museum exhibitions.

13. Plaintiff markets its goods only through its own "Dinosaur Designs" boutiques in the United States and Australia, and under license to a select group of high-end retail boutiques that Plaintiff does not own. Plaintiff has a stand-alone "Dinosaur Designs" boutique on Elizabeth Street in Manhattan.

---

[1] U.S. Trademark No. 2104807; Australian trademark registration numbers A583353 and 583354; United Kingdom trademark registration numbers 1525402, with priority dates going back to 1992. The Class 14 registration covers jewelry made from non-precious materials, and the Class 21 registration covers various housewares. Dinosaur also holds registrations in Classes 14 and 21 in China, Japan and New Zealand.

2

14. Plaintiff never sells its goods through mass-market outlets.

15. Plaintiff is the owner of U.S. Copyright Registration Nos. VA 1766142, VA 1766144, VA 1766132, VA 1782403 and other applications for certain of its jewelry (the "Registered Copyrights").[2]

16. Tre is in the business of making and selling jewelry.

17. On information and belief, Marisa Noel Brown, Ulrica Lanaro and Lillian Stern are the members of Tre.

18. On information and belief, Alessandro Lanaro is the chief executive and chief operation officer of both Modo Retail and Modo Eyewear (hereinafter collectively referred to as "Modo").

19. Alessandro Lanaro is Tre's agent for service of process with the New York Department of State.

20. On information and belief, Modo is actively involved in the operations and management of Tre.

### A. Defendants Purchase Plaintiff's Jewelry From Plaintiff's New York City Boutique.

21. On or about December 6, 2010, Ulrica Lanaro (or her authorized representative), acting on behalf of the defendants, used an American Express card in the name of Ulrica Lanaro to make a telephone purchase of five separate items of DINOSAUR DESIGNS jewelry for $525.

22. At least one of the items purchased that day, DINOSAUR DESIGNS "Boulder" bangle, is copyrighted under registration VA 1766142, issued on March 25, 2011.

23. On or about December 9, 2010, at approximately 12:30 p.m., Mrs. Lanaro (or her authorized representative), acting on behalf of the defendants, appeared in the DINOSAUR

---

[2] Plaintiff is also appealing the rejection of applications No. 1-586770614, 1-586770586, and 1-586770668.

3

DESIGNS store and purchased two items of DINOSAUR DESIGNS copyrighted jewelry, also using Mrs. Lanaro's American Express card, for $210.

24. At least one of the items purchased on December 9, 2010, at approximately 12:30 p.m., DINOSAUR DESIGNS "Wishbone" necklace, is copyrighted under registration VA 1766132.

25. Again on December 9, 2010, at approximately 4:30 p.m., Mrs. Lanaro (or her authorized representative), acting on behalf of the defendants, appeared in the DINOSAUR DESIGNS store and purchased yet another item of DINOSAUR DESIGNS copyrighted jewelry for $75, again using Mrs. Lanaro's American Express Card.

26. The sole item purchased at 4:30 p.m. on December 9, 2010, by Mrs. Lanaro, DINOSAUR DESIGNS "Moon Rock" bangle is copyrighted under registration VA 1766132.

### B. Defendants Make Unauthorized Copies of the DINOSAUR DESIGNS Jewelry They Purchased

27. On information and belief, sometime between December 9, 2010 and the end of January January 2011, Tre and Modo used Plaintiff's copyrighted jewelry works as models or samples in order to reproduce them for sale under the name of TRE.

28. On information and belief, Tre and Modo directed a contract manufacturer in China to copy at least some of Plaintiff's copyrighted sculptural jewelry pieces.

29. On information and belief, the copies were made by taking molds from Plaintiff's copyrighted sculptural jewelry pieces, and then using those molds to manufacture the infringing copies.

30. On information and belief, Tre and Modo instructed the contract manufacturer to omit Plaintiff's trademarked name from the copies to be produced.

4

### C. Defendants Publication of the Unauthorized Copies, and Plaintiff's Discovery of It at a Trade Show

31. On information and belief, Defendants displayed and distributed their "look book" and "line sheets" as an offer to sell and distribute Defendants' unauthorized copies of Plaintiff's actual copyrighted works in February 2011, at the *Coterie* trade show at the Javits Center in New York City ("Coterie").

32. On information and belief, Defendants retained a sales representative, Cynthia O'Connor + Associates, in order to help them offer Defendants' products for sale, to take orders for sales, and to make actual sales of Defendants' goods, including unauthorized copies of Plaintiff's actual copyrighted works.

33. On information and belief, Defendants, either directly or through its sales representative, generated and received orders for Defendants' infringing products at or as a result of Coterie based on Defendants' use at Coterie of the "look book" and "line sheets".

34. On information and belief, Coterie is attended by sellers and buyers from throughout the United States and from around the world.

35. Plaintiffs also offered their jewelry and other products for sale at the Plaintiff's booth at Coterie.

36. On or about February 22, 2011, at Coterie, Plaintiffs discovered Defendants' infringement when Plaintiffs saw Defendants' "look book" and "line sheet" at the booth of Defendants' sales representative, Cynthia O'Connor + Associates.

37. On information and belief, even after Coterie ended, Defendants continued to use its "look book" and "line sheets" in order to offer for sale, and to take orders for sales, of Defendants' products, including the products that infringe Plaintiff's copyrights.

38. On information and belief, Defendants continued to offer for sale and to sell its unauthorized copies of Plaintiff's copyrighted works through Defendants' website.

39. On information and belief, Defendants' sales representative continued to offer for sale and to sell Defendants' unauthorized copies of Plaintiff's copyrighted works.

### D. Plaintiff's Cease and Desist Letter

40. On April 1, 2011, Plaintiffs sent a cease and desist letter (the "Cease and Desist Letter") notifying Defendants of Plaintiff's copyrights, of the fact that Defendants had infringed Plaintiff's copyrights.

41. The Cease and Desist Letter demanded, *inter alia*:

> ... that Tre immediately cease and desist any and all copying, importation, manufacture (domestic and foreign), offering for sale, sale, distribution, advertising, promotion and display of the Infringing Products. We also demand that Tre confirm in writing that all copying, importation, manufacture (domestic), offering for sale, sale, distribution, advertising, promotion and display of the Infringing Products has ceased no later than seven (7) days from your receipt of this letter. Finally, we demand that within the same seven-day period you do the following:
>
> 1. Provide the identity and source of all of the Infringing Products sold by you or offered by you for sale; and
>
> 2. Provide the names and addresses of any and all persons to whom the Infringing Products have been distributed or sold or by whom orders for any such items have been placed, and the details of such sales and orders, including dollar amounts; and
>
> 3. Deliver to the undersigned (for destruction) all unauthorized copies of the copyrighted works, whether in intermediate, developmental or final form, including but not limited to prototypes, maquettes, sketches, and molds developed or used for the creation of Infringing Product.

42. On April 1, 2011, a similar Cease and Desist letter was delivered to Defendants' sales representative, Cynthia O'Connor + Associates.

### E. Defendants' Conscious Evasion of Delivery of the Cease and Desist Letter

43. On information and belief, Defendants or their representative avoided hand-delivery of the letter via messenger on April 1, 2011 by indicating to the messenger that there was no company named Tre at 594 Broadway, 8th Floor, New York, NY 10012.

44. On or about April 4, 2011, Plaintiff attempted to have delivered the same cease and desist letter to Defendants via Federal Express. On information and belief, Federal Express was unable to make delivery for the same reason.

45. According to the New York Department of State, Department of Corporations Entity Database, 594 Broadway, 8th Floor (or Suite 801), New York, NY 10012 is the address of record of both Tre and Modo.

46. On April 1, 2011, according to "read receipts" generated in the ordinary course of business by Microsoft Outlook, the cease and desist letter was delivered to Ulrica Lanaro via e-mail, and that e-mail was at least opened by Mrs. Lanaro or her authorized representative.

### F. Defendants Willful Ignoring of Plaintiff's Cease and Desist Letter Even After it Was Received by Them.

47. Defendants failed to respond promptly to the cease and desist letter.

48. Counsel for Defendants responded cursorily via e-mail on April 8, 2011, indicating that he would review the matter and "revert to you next week", but did not do so.

49. Defendants, either on their own or through counsel, failed to provide any of the assurances demanded in the Cease and Desist Letter.

50. Defendants, either on their own or through counsel, failed to provide any of the documents demanded in the Cease and Desist Letter.

51.  Defendants refused to identify the retail outlets currently offering the infringing products for sale, and indicated that Defendants believed that this information was somehow confidential.

52.  By late May 2011, Defendants, either on their own or though counsel, have provided only cursory and wholly inadequate information that might allow Plaintiff to investigate the veracity of Defendants' defenses, or to secure any real information relating to the infringements.

53.  Plaintiff, through its counsel, requested clarification of certain points, and asked for additional documents to confirm certain information related to the production of the infringing products. Plaintiff has received no response to this request.

54.  Defendants have acted in a manner showing intransigence and willful disregard of the existence of Plaintiff's registered copyrights and copyright applications, as well as the Cease and Desist Letter of April 1, 2011.

55.  Plaintiff has been damaged by Defendants' deliberate copying of Plaintiff's sculpted jewelry creations, and by Defendants' willfulness and intransigence even after Defendants were actually informed of Plaintiff's registered copyrights.

### First Claim
### (Copyright Infringement)

56.  Plaintiff repeats and realleges the allegations in Paragraphs 1 through 55 of their Complaint.

57.  Defendants have infringed Plaintiff's registered copyrights referenced in this Complaint, and other copyrights as well.

58.  On information and belief, Defendants' acts of infringement include the use of Plaintiff's copyrighted works as models and/or molds for Defendants' jewelry, the reproduction

in large quantities of Plaintiff's copyrighted works, and the distribution and sale of Defendants' infringing products.

59. Plaintiff has been damaged by Defendants' acts of infringement.

## Second Claim
### (Violation of §43(a) of the Lanham Act: Trade Dress Infringement)

60. Plaintiff repeats and realleges the allegations in Paragraphs 1 through 59 of this Complaint.

61. The distinctive surface of Plaintiff's products constitutes its trade dress.

62. Defendants copied Plaintiff's trade dress.

63. There is a likelihood of confusion between Defendants' products and Plaintiff's products.

64. Plaintiff has been damaged by Defendants' infringement of Plaintiff's distinctive trade dress.

## Third Claim
### (Violation of §43(a) of the Lanham Act: False Representation)

65. Plaintiff repeats and realleges the allegations in Paragraphs 1 through 64 of this Complaint.

66. Defendants made false representations of its goods in their "look book" and "line sheets" as Defendants' original goods when many of those goods were instead photographs either of unauthorized copies of Plaintiff's original copyrighted goods or of Plaintiff's actual products.

67. Defendants used their "look book" and "line sheets" in interstate commerce, and made sales in interstate commerce as a direct result.

68. Plaintiff has been damaged by Defendants' false representations of Plaintiff's goods as Defendants' own goods.

## Fourth Claim
### (Violation of New York General Business Law §§349-350)

69. Plaintiff repeats and realleges the allegations in Paragraphs 1 through 68 of this Complaint.

70. N.Y. Gen. Bus. L § 349(a) outlaws "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

71. N.Y. Gen. Bus. L. § 350 outlaws "False advertising in the conduct of any business, trade or commerce."

72. Defendants' advertised and sold the infringing goods referenced in this Complaint to consumers in the State of New York.

73. Such consumers were misled into believing that the goods were original creations, when they were in fact infringing copies of Plaintiff's products.

74. Plaintiff has been damaged by Defendants' acts of deception, including but not limited to lost sales of Plaintiff's original jewelry at the expense of defendants' cheap knock-offs.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment:

a. Awarding Plaintiff compensatory damages arising from Defendants' unlawful acts;

b. Awarding Plaintiff enhanced statutory damages, arising from Defendants' willful acts of copyright infringement and other behavior evidencing willfulness, to the extent permitted under copyright law and the General Business Law;

  c. Awarding Plaintiff the costs and expenses of this action, including its reasonable attorneys' fees pursuant to N.Y. Gen. Bus .L. § 349(h);

  d. Awarding Plaintiff preliminary and permanent injunctive relief; and

  e. Awarding the Plaintiff such other and further relief as the Court may deem just and proper.

## Jury Demand

Plaintiff demands a jury trial with respect to all issues triable before a jury.

Dated: September 23, 2011

            **LYNN & CAHILL LLP**

          By: _____
            John R. Cahill
            Ronald W. Adelman
            58 W. 40th Street
            New York, New York 10018
            Tel: (212) 719-4400
            Fax: (212) 719-4440

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASTEROID PTY. LTD. trading as DINOSAUR DESIGNS<br><br>*Plaintiff,*<br><br>-against-<br><br>TRE LAB, LLC, MODO RETAIL, LLC, MODO EYEWEAR and JOHN DOES 1-15,<br><br>*Defendants.* | Case No. 11-CV-4229 (PGG)<br><br>**AFFIDAVIT OF SERVICE** |

ALLISON K. HOGSTROM declares under penalty of perjury:

On September 26, 2011, I served the within **Amended Complaint** by e-mail on the following:

Charles L. Rosenzweig
Rand Rosenzweig Radley & Gordon LLP
800 Third Avenue, 26th Floor
New York, New York 10022
*Attorneys for Defendant Tre Lab, LLC, Modo Retail, LLC, Modo Eyewear and John Does 1-15*

E. Cooke Rand
Rand Rosenzweig Radley & Gordon LLP
800 Third Avenue -- 26th Floor
New York, NY 10022
*Attorneys for Defendant Tre Lab, LLC, Modo Retail, LLC, Modo Eyewear and John Does 1-15*

Dated: New York, New York
       September 26, 2011

_____
Allison K. Hogstrom